1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

9

10

| | | |
|---|---|---|
| J. BRUCE ALVERSON, LTD., a Nevada Corporation, d/b/a ALVERSON, TAYLOR, MORTENSEN & SANDERS, | ) ) ) ) | Case No.: 2:15-cv-2141-GMN-CWH |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| NORTEK, INC., a Delaware Corporation, | ) ) | |
| Defendant | ) ) | |

11

12

13

14

15

   Pending before the Court is the Motion to Dismiss for Lack of Jurisdiction (ECF No. 5) filed by Defendant Nortek, Inc. ("Nortek").  Plaintiff, J. Bruce Alverson, Ltd., ("Alverson") subsequently filed an Opposition. (ECF No. 12).  Thereafter, Nortek filed a Reply. (ECF No. 14).  For the reasons discussed in this Order, Nortek's Motion to Dismiss for Lack of Jurisdiction is GRANTED.

16

**I.      BACKGROUND**

17

18

19

20

21

22

   Alverson filed its Complaint alleging causes of action against Nortek for Breach of Contract, Unjust Enrichment, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Declaratory Relief. (Compl. ECF No. 1-1).  Alverson is incorporated under the laws of Nevada and practices law in Clark County, Nevada. (Compl. ¶ 2, ECF No. 1-1).  Nortek is a Delaware corporation with its headquarters and principal place of business in Rhode Island. (Mot. to Dismiss 1:25-27, ECF No. 5).

23

24

25

   Alverson alleges it entered into an agreement with Caradon Doors & Windows, Inc. ("Caradon"), a wholly-owned subsidiary of Nortek, to provide legal defense in three specific construction defect lawsuits. (Compl. ¶ 4, ECF No. 1-1).  Alverson alleges Caradon used its

1   legal defense services without remitting payment, which directly and proximately caused

2   Alverson damages in the approximate amount of $144,511.06, with costs and interest. (*Id.* at

3   2:5-19, 3:1-7).

4          In its Motion to Dismiss, Nortek argues that the claims against it should be dismissed for

5   lack of personal jurisdiction, as Nortek does not do business in Nevada and does not have any

6   agents, offices, or employees in Nevada. (Mot. to Dismiss 2:9-14).  In its Response, Alverson

7   argues that the Court may properly exercise personal jurisdiction in this case because Nortek's

8   subsidiaries engage in business in Nevada, and many of Nortek's products ultimately reach

9   Nevada consumers through dealers and distributors. (Plaintiff's Resp., ECF No. 12).  In the

10  alternative, Alverson requests that if the Court is inclined to grant Nortek's Motion, it should

11  instead "enter a stay of the Motion to Dismiss so that the parties may conduct jurisdictional

12  discovery to determine the extent of [Nortek's] contact with the State," and the control Nortek

13  maintains over its subsidiaries. (*Id.* at 11:1-4).

14  **II.    LEGAL STANDARD**

15         A defendant may move to dismiss an action for lack of personal jurisdiction under Rule

16  12(b)(2) of the Federal Rules of Civil Procedure.  "Although the burden is on the plaintiff to

17  show that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing,

18  the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the

19  motion to dismiss." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671-72

20  (9th Cir. 2012).

21         To establish personal jurisdiction where in the absence of an applicable federal statute,

22  there must be personal jurisdiction under the laws of the state where it is asserted, and the

23  exercise of jurisdiction must satisfy due process. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653

24  F.3d 1066, 1073 (9th Cir. 2011).  In Nevada the jurisdictional analysis is essentially the same as

25  under the Due Process Clause, U.S. Const. amend. XIV, § 1, because Nevada's long arm

statute, Nev. Rev. Stat. § 14.065(1), by its terms, extends personal jurisdiction over defendants to the limits of the state and federal constitutions. *See Trump v. Eighth Jud. Dist. Ct.*, 857 P.2d 740, 747 (Nev. 1993).

"There are two types of personal jurisdiction, specific and general." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). "General personal jurisdiction, which enables a court to hear cases unrelated to the defendant's forum activities, exists if the defendant has 'substantial' or 'continuous and systematic' contacts with the forum state." *Id.* (citing *Helicopteros Nacionales de Colombia*, S.A. v. Hall, 466 U.S. 408, 414 (1984)). This standard is "fairly high" and uncommonly met. *Id.* Alternatively, specific jurisdiction is analyzed under a three-prong test in the Ninth Circuit:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*CollegeSource*, 653 F.3d at 1076 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of satisfying the first two prongs, and if this burden is met, the burden then shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

If a plaintiff can prove by a prima facie case the defendant had the necessary minimum contacts in the forum to establish personal jurisdiction, but is attempting to impute a subsidiary's claims to its parent company, then the plaintiff bears the burden of showing the entities are not separate, rather the "subsidiary is the parent's alter ego." *Harris v. Rutsky & Co,*

1   *Ins. Services, Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003).  A subsidiary

2   is an "alter ego" of its parent company if it "acts as a general agent of the parent." *Id.*  To show

3   the subsidiary acts as a general agent of the parent company, "the [p]laintiff must make out a

4   prima facie case [showing] '(1) that there is such unity of interest and ownership that the

5   separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their

6   separate identities] would result in fraud or injustice.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 926

7   (9th Cir. 2001) (quoting *American Telephone & Telegraph Co. v. Compagnie Bruxelles*

8   *Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)).  "The plaintiff must show . . . the parent exercises

9   such control over the subsidiary so as to 'render the latter the mere instrumentality of the

10  former." *Harris v. Rutsky & Co. Ins. Services, Inc.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

11        "A parent-subsidiary relationship alone is insufficient to attribute the contacts of the

12  subsidiary to the parent" to establish personal jurisdiction. *Harris*, 328 F.3d 1122, 1134 (9th

13  Cir. 2003) (citing *Unocal*, 248 F.3d at 925).  Similarly, a parent company can lend itself to

14  activities such as "provid[ing] financing to its subsidiary . . . referring to its subsidiaries as

15  divisions of the parent in annual reports," reviewing and approving subsidiary major business

16  decisions, sharing staff and offices, and "plac[ing] its own directors on the subsidiary's board"

17  and still not subject itself to an alter-ego status. *In re W. States Wholesale Nat. Gas. Litig.*, 605

18  F. Supp. 2d 1118, 1133 (D. Nev. 2009).  Therefore, a high burden exists in proving alter-ego

19  status. *Unocal*, 248 F.3d at 926-28.

20        The Ninth Circuit has allowed jurisdictional discovery where preliminary evidence

21  showed "a minimum factual showing" of a potential alter-ego relationship. *Pfister v. Selling*

22  *Source, LLC*, 931 F. Supp. 2d. 1109, 1118 (D. Nev. 2013) (citing *Harris*, 328 F.3d 1122, 1135

23  (9th Cir. 2003) and *Martinez v. Manheim Cen. Cal.*, 2011 WL 1466684, at *5 (E.D. Cal. Apr.

24  18, 2011)).  However, "Where a plaintiff's claim of personal jurisdiction appears to be both

25

1    attenuated and based on bare allegations in the face of specific denials made by the defendant[],

2    the Court need not permit even limited discovery." *Id.* at 1117.

3    **III.    <u>DISCUSSION</u>**

4         In its Response, Alverson argues that the Court may properly exercise personal

5    jurisdiction over Nortek because (1) Nortek is merely an alter-ego of Caradon, and (2)

6    regardless of Caradon's alter-ego status, Nortek maintains sufficient contacts with Nevada for

7    the Court to exercise general jurisdiction.[1]  The Court will address each of these arguments in

8    turn.

9         **A. Alter-Ego**

10        In order to demonstrate that Caradon was Nortek's alter ego, Alverson must show that

11   the Nortek exercised control so extensive that Caradon was rendered a "mere instrumentality"

12   of Nortek. *Harris v. Rutsky & Co. Ins. Services, Inc.*, 328 F.3d 1122, 1135 (9th Cir. 2003).  To

13   make this prima facie showing, Alverson bears the burden of demonstrating that the Nortek was

14   directly involved in Caradon's day-to-day operations and internal affairs. *In re W. States*

15   *Wholesale Nat. Gas. Litig.*, 605 F. Supp. 2d 1118, 1132 (D. Nev. 2009) (citing *Kramer Motors,*

16   *Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980).  However, even "total

17   ownership and shared management personnel are alone insufficient to establish the requisite

18   level of control." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

19        In *Ranza*, the Ninth Circuit held that a subsidiary could not impute liability to its parent

20   company for the purpose of personal jurisdiction because the plaintiff in that case could not

21   establish an alter-ego relationship. *Id.* at 1075.  The parent company's involvement with its

22   subsidiary included: controlling the subsidiary's budgets and large purchases, overseeing the

23   subsidiary's marketing activities, and having some of the subsidiary's employees indirectly

24

25

[1] The Court declines to perform a specific-jurisdiction analysis regarding Nortek's direct activities in Nevada because Alverson does not argue that its claims are in any way related to these activities.

report to the parent company's supervisors. *Id.* at 1074.  The court in *Ranza* found that because the parent company did not control the subsidiary's daily operations and each entity had its own formalities, the subsidiary was not merely an alter ego of the parent company. *Id.*  Therefore, the subsidiary could not attribute its claims to the parent company to establish personal jurisdiction. *Id.*  Similarly, in *In re Western States Natural Gas*, the court held that a parent company's referring to a subsidiary as one of its "divisions" in annual financial reports, sharing office space with the subsidiary, and reviewing and approving the subsidiary's major decisions would not establish an alter-ego relationship between the parent and subsidiary. 605 F. Supp. 2d at 1133.

In this case, Alverson provides several examples of how it believes Nortek and Caradon operated as a single corporate entity. (Plaintiff's Resp., 6:9-8:4, ECF No. 12).  These examples include the fact that (1) Nortek reported its own income, losses, and profits together with those of its subsidiaries in its public filings; (2) Nortek generally maintained financial control of its subsidiaries; and (3) several members of the boards of Nortek's subsidiaries also worked at Nortek's head office. (*Id.*).

Similar to *Ranza* and *In re Western States Natural Gas*, Alverson's allegations in the instant case do not establish that Caradon was an alter ego of Nortek.  Indeed, the oversight provided by Nortek as well as its shared leadership are consistent with Nortek's status as an investor in Caradon, and do not indicate that Caradon was a "mere instrumentality" of Nortek. *See Ranza*, 793 F.3d at 1074-75; *In re Western States Natural Gas*, 605 F. Supp. 2d at 1133. Thus, Alverson has failed to satisfy its burden show that Nortek is subject to personal jurisdiction as a result of an alter-ego relationship with Caradon.

**A.  General Jurisdiction**

To invoke general jurisdiction a plaintiff "must meet an 'exacting standard' for the minimum contacts required." *Ranza*, 793 F.3d at 1069.  "General . . . jurisdiction exists where

1   the defendant's activities in the forum state are so substantial . . . continuous [or] systematic

2   that it may be deemed present in the forum and hence subject to suit over claims unrelated to its

3   activities there." *Firouzabadi v. First Judicial Dist. Court In & For Carson City*, 885 P.2d 616,

4   619 (Nev. 1994); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

5   414 (1984).  The Ninth Circuit held in *Ranza* that the defendant's selling products and

6   employing personnel in the forum were insufficient, by themselves, to establish general

7   jurisdiction. *Ranza*, 793 F.3d at 1070.

8         Similarly, Alverson has failed to demonstrate that Nortek's activities render it "at home"

9   in Nevada.  Alverson's evidence demonstrates only that Caradon and other Nortek subsidiaries,

10   rather than Nortek itself, directly conduct business in Nevada.  Furthermore, Alverson's claim

11   that numerous Nortek products have ultimately been installed in homes in Nevada is

12   insufficient to establish that Nortek had continuous and systematic contacts of the character

13   necessary to invoke general jurisdiction.  Thus, Alverson has failed to satisfy its burden, and

14   the Court cannot exercise general personal jurisdiction over Nortek.

15         **B.  Stay for Jurisdictional Discovery**

16         Alternatively, Alverson requests further jurisdictional discovery to allow it to gather

17   evidence to establish jurisdiction.  However, if a plaintiff is initially unable to provide evidence

18   to establish a minimum factual showing that an alter-ego relationship exists, then additional

19   jurisdictional discovery is not warranted. *Pfister v. Selling Source*, LLC, 931 F. Supp. 2d 1109,

20   1118-19 (D. Nev. 2013); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)

21   (denial of discovery request not an abuse of discretion where request "was based on little more

22   than a hunch that it might yield jurisdictionally relevant facts").  Because Alverson has

23   provided no evidence indicating that Nortek was involved in Caradon's day-to-day operations,

24   or that Caradon failed to conduct its own corporate formalities, the Court finds that Alverson

25   has not satisfied its burden to provide a minimal factual showing indicating the existence of an

1    alter-ego relationship, and therefore its request for additional jurisdictional discovery will be

2    denied.

3    **IV.**    **CONCLUSION**

4         **IT IS HEREBY ORDERED** that Nortek's Motion to Dismiss (ECF No. 5) is

5    **GRANTED**.  Alverson's Complaint is hereby **DISMISSED** without prejudice.  The Clerk is

6    instructed to enter judgment accordingly and close the case.

7

8         **DATED** this ___20___ day of April, 2016.

9

10

11

12

13    _____

14    Gloria M. Navarro, Chief Judge
      United States District Court

15

16

17

18

19

20

21

22

23

24

25